IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JANE DOE,                          §
                                   §
            Plaintiff,             §
                                   §
VS.                                §        Civil Action No. 3:25-CV-0770-D
                                   §
G6 HOSPITALITY, LLC, et al.,       §
                                   §
            Defendants.            §

MEMORANDUM OPINION
AND ORDER

In this action, plaintiff Jane Doe ("Doe") asserts federal- and state-law sex trafficking claims against defendants G6 Hospitality, LLC, G6 Hospitality Franchising, LLC, G6 Hospitality IP, LLC, G6 Hospitality Property LLC, G6 Hospitality Purchasing, LLC, and Motel 6 Operating, LP (collectively "defendants," unless the context indicates otherwise). Defendants move to dismiss Doe's first amended complaint ("amended complaint") under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons that follow, the court denies the motion in part on the merits and in part as moot.

I

This lawsuit arises out of the sex trafficking of Doe at a Studio 6 hotel. Doe alleges in her amended complaint that she "was trafficked at a hotel owned and operated by Defendants while exhibiting signs and behaviors consistent with [sex trafficking] in the presence of Defendants' employees and agents." Am. Compl. (ECF No. 23) ¶ 9. The parties dispute whether defendants are in fact franchisors, franchisees, or owner-operators and

whether all defendants owned and operated the Studio 6 hotel where Doe was trafficked. But the court must accept ¶ 9 as true, and therefore assumes for purposes of deciding defendants' motion that defendants are owner-operators and does not decide whether they are franchisors or franchisees.[1]

In 2014 Doe visited a Studio 6 hotel in Dallas for what she believed to be a job interview for a housekeeping position. When she arrived, a man named Malik and his armed associate took her captive using physical violence and threats against her family. Malik and his associate then coerced Doe into taking sexually explicit photographs, which they posted on online platforms, and forced her to engage in commercial sex acts with clients. Doe was allegedly trafficked up to two times per week for eight months at defendants' Studio 6 location.

Doe alleges that Studio 6 staff observed signs that she was being sex trafficked. Malik rented a specific room at the hotel; he paid in cash or with a prepaid card to avoid using his real name; numerous men entered and exited this room at all hours; large quantities of used condoms filled the trash cans; Doe and other victims had, to defendants, the appearance, demeanor, and restricted movements of trafficking victims; and when a new client entered

---

[1]Defendants contend in their reply that the Studio 6 hotel in question was not franchised at the time Doe was trafficked, and, therefore, that the franchisor defendants do not belong in the suit. But at the Rule 12(b)(6) stage the court must accept all well-pleaded facts as true and view them in the light most favorable to Doe as the nonmovant. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Although the court suggests no view regarding whether defendants can prevail on this position via another motion, such as a summary judgment motion or a motion for judgment as a matter of law, it is unable to grant dismissal based on the instant Rule 12(b)(6) motion.

the hotel room, Malik would leave and stand outside.

Doe asserts that Studio 6 employees were required to, and did, report to defendants these indicators of sex trafficking.  Nevertheless, defendants and their employees allegedly looked the other way and continued to rent the same room to Malik.

In June 2015 Doe managed to escape her captors.  At another hotel a man who engaged in commercial sex with Doe expressed a desire to help her escape.  He remained beyond the time allotted, which agitated Malik, causing him to attempt to break down the door.  A bystander summoned police, who removed Malik from the property, and Doe fled. Approximately ten years later, Doe filed this lawsuit.[2]

Doe's amended complaint alleges that defendants knowingly benefited from, and participated in, her trafficking, in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581 *et seq.*, and Tex. Civ. Prac. & Rem. Code Ann. § 98.002 (West 2017).  Defendants move under Rule 12(b)(6) to dismiss Doe's TVPRA and § 98.002 claims as time-barred and inadequately pleaded.  Doe opposes the dismissal of her TVPRA claims but not her claim under § 98.002.  The court is deciding the motion on the briefs, without oral argument.

---

[2]Doe filed her original complaint on March 28, 2025.  A defendant who has been dropped from Doe's amended complaint moved to dismiss the original complaint under Rule 12(b)(6).  Before the court could consider that motion, Doe filed her amended complaint, thereby mooting the motion to dismiss that was addressed to her original complaint.

II

The court first considers defendants' contention that Doe's TVPRA claims should be dismissed as time-barred.

The "statute of limitations is an affirmative defense . . . ." *Frame v. City of Arlington*, 657 F.3d 215, 239 (5th Cir. 2011).

> Rule 12(b)(6) dismissal may [] be appropriate based on a successful affirmative defense provided that the affirmative defense appears on the face of the complaint. In this situation, it must be apparent from the plaintiff's own allegations that a defense is fatal to the claim. In other words, the pleadings must reveal beyond doubt that the plaintiff[] can prove no set of facts that would overcome the defense or otherwise entitle [her] to relief.

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022) (cleaned up). Dismissal based on a statute of limitations defense is not appropriate unless it is evident from the plaintiff's complaint that the claim is untimely under the applicable statute of limitations, and there is no basis for equitable tolling or the like. *See Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

Defendants contend that a portion of Doe's TVPRA claims are untimely under the applicable ten-year limitations period. They maintain that because Doe filed this lawsuit on March 28, 2025, she cannot bring claims based on alleged trafficking that occurred before March 28, 2015. Defendants also maintains that there is no basis for equitable tolling.

Doe responds that, although her trafficking began more than ten years before she filed this lawsuit, the continuing violation doctrine delayed the accrual of her TVPRA claims until

she escaped captivity in June 2015, and therefore all of her claims are timely. Doe also contends that the statute of limitations should be tolled under the fraudulent concealment and discovery rule doctrines, and because she suffered from psychological trauma as a result of the trafficking.

III

The court considers first whether it is evident from Doe's amended complaint that there is no basis for equitable tolling.[3]

A

The court must initially determine whether the TVPRA's statute of limitations is subject to equitable tolling. The TVPRA's statute of limitations states:

> No action may be maintained under subsection (a) unless it is commenced not later than the later of [] (1) 10 years after the cause of action arose; or (2) 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense.

18 U.S.C. § 1595(c). "[W]e presume that federal statutes of limitations are subject to equitable tolling." *Arellano v. McDonough*, 598 U.S. 1, 6-7 (2023); *see also Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 208-09 (2022) ("Equitable tolling is a traditional feature of American jurisprudence and a background principle against which Congress drafts limitations periods."); *Young v. United States*, 535 U.S. 43, 49-50 (2002)

_____

[3]The court will assume *arguendo* that the relevant portions of Doe's TVPRA claims are untimely without equitable tolling, because it is not evident from her amended complaint that there is no basis for equitable tolling. Accordingly, the court need not address whether the continuing violation doctrine applies to Doe's TVPRA claims.

(describing the proposition as "hornbook law").   There are, however, three principal exceptions: (1) statutes of repose, *see Cal. Pub. Emps.' Ret. Sys. v. ANZ Secs., Inc.*, 582 U.S. 497, 508 (2017); (2) statutes of limitations that are jurisdictional, *see United States v. Wong*, 575 U.S. 402, 408 (2015); and (3) where equitable tolling is "inconsistent with the text of the relevant statute," *United States v. Beggerly*, 524 U.S. 38, 48 (1998).

B

The court concludes that § 1595(c) is not a statute of repose.

> A statute of repose . . . puts an outer limit on the right to bring a civil action.  That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant.  A statute of repose bars any suit that is brought after a specified time since the defendant acted . . . , even if this period ends before the plaintiff has suffered a resulting injury.  The statute of repose limit is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered.

*CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) (cleaned up).  Section 1595(c), by contrast, is expressly tied to the accrual of a cause of action.  It is measured, not from the date of the defendants' last culpable act or omission, but from the date on which "the cause of action arose."  18 U.S.C. § 1595(c).

C

The court holds next that § 1595(c) is not jurisdictional.  A federal statute of limitations is jurisdictional "only if Congress has 'clearly state[d]' as much."  *Wong*, 575 U.S. at 409 (alteration in original) (citation omitted).  Here, Congress has not clearly done so.  Rather than "speak[ing] in jurisdictional terms or refer[ring] in any way to the

jurisdiction of the district courts," § 1595(c) "reads like an ordinary, run-of-the-mill statute of limitations, spelling out a litigant's filing obligations without restricting a court's authority." *Id.* at 411 (cleaned up).

D

And the court concludes that equitable tolling is not inconsistent with the TVPRA's text. There is no "good reason to believe that Congress did *not* want the equitable tolling doctrine to apply" to the TVPRA. *United States v. Brockamp*, 519 U.S. 347, 350 (1997) (emphasis in original). The TVPRA's text, for example, does not "set[] forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions." *Id.* Nor does it contain a "comprehensive scheme" enumerating "an exhaustive list of exceptions" to the default limitations rule, with many such exceptions "reflect[ing] equitable considerations," *Arellano*, 598 U.S. at 7-9. Nor does it "already effectively allow[] for equitable tolling." *Beggerly*, 524 U.S. at 48.

It is evident that the TVPRA allows for some tolling by extending the limitations period for minor victims to the later of 10 years after the cause of action arose or 10 years after the victim reaches 18 years of age. *See* 18 U.S.C. § 1595(c); *Waldburger*, 573 U.S. at 17 (describing a provision extending limitations period for minor or incompetent plaintiffs as a "tolling rule"). But the inclusion of a tolling rule in § 1595(c) does not evince a rejection of equitable tolling as it did in *United States v. Beggerly*, 524 U.S. 38, 48 (1998). In *Beggerly* the Court concluded that the statute of limitations at issue was not subject to equitable tolling because it expressly incorporated the discovery rule. *See id.* But the

- 7 -

discovery rule is equitable, which explains the Court's inference that Congress did not contemplate further equitable tolling of that limitations period. Here, by contrast, § 1595(c)'s tolling of the limitations period for minor victims is not equitable, but requires express statutory language. *See Vance v. Vance*, 108 U.S. 514, 521 (1883) ("The exemptions from the operation of statutes of limitations, usually accorded to infants and married women, do not rest upon any general doctrine of the law that they cannot be subjected to their action, but in every instance upon express language in those statutes giving them time, after majority or after cessation of coverture, to assert their rights."); *United States v. Alvarez*, 710 F.3d 565, 568 n.10 (5th Cir. 2013) ("The federal courts have consistently rejected requests to create tolling exceptions for minors, reasoning that in the absence of an express legislative directive to the contrary, parents and guardians are assumed to be adequate surrogates."). The negative inference of *Beggerly* is therefore not warranted here.

Accordingly, the court concludes that the limitations periods that § 1595(c) prescribes are subject to equitable tolling.

E

The court now decides whether it is evident from Doe's amended complaint that there is no basis for the statute of limitations to be equitably tolled.

Doe was not required to anticipate or negate potential affirmative defenses in her amended complaint by, for example, pleading equitable tolling. *See* Rule 12(b)(6); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Taylor v. Anderson*, 234 U.S. 74, 75 (1914). And although Doe in fact addresses equitable tolling

in her amended complaint, she did not affirmatively plead herself out of court by alleging facts that demonstrate that, as applied to her, there is no basis to equitably toll the TVPRA's limitations period. Accordingly, even assuming that some of her TVPRA claims fall outside the ten-year limitations period, the doctrine of equitable tolling, when applicable, can permit these claims to move forward. *See Fuller v. CIG Fin., LLC*, 2022 WL 4071964, at *4 (N.D. Tex. Sept. 2, 2022) (Fitzwater, J.).

Accordingly, the court denies defendants' motion to dismiss Doe's TVPRA claims as time-barred.

## IV

The court considers next whether Doe has stated a claim on which relief can be granted for direct liability under § 1595(a) the TVPRA.

## A

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the] plaintiff's amended complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

- 9 -

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S.

at 555 ("Factual allegations must be enough to raise a right to relief above the speculative

level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the

pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule

8(a)(2)).  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Id.* at 678.

B

In 2000, Congress enacted the Victims of Trafficking and Violence Protection Act of

2000 to "combat trafficking in persons . . . to ensure just and effective punishment of

traffickers, and to protect their victims."  22 U.S.C. § 7101 (West 2000).  As amended, the

Act grants trafficking victims a cause of action against their traffickers and beneficiaries of

their trafficking:

> An individual who is a victim of a violation of [18 U.S.C.
> §§ 1581-1597] may bring a civil action against the perpetrator
> (or whoever knowingly benefits, or attempts or conspires to
> benefit, financially or by receiving anything of value from
> participation in a venture which that person knew or should have
> known has engaged in an act in violation of this chapter) in an
> appropriate district court of the United States and may recover
> damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).  To state a TVPRA claim against an alleged beneficiary of trafficking,

- 10 -

a plaintiff must plausibly plead that: (1) she was a victim of a violation of 18 U.S.C. §§ 1581-1597; (2) the defendants participated in a venture; (3) the defendants knew or should have known that such venture violated the TVPRA; and (4) the defendants knowingly benefited, or attempted or conspired to benefit, financially, or by receiving anything of value from such participation. *Id.* Defendants contend that Doe has not plausibly pleaded the second, third, and fourth elements of her TVPRA beneficiary liability claim.[4]

C

The court considers first whether Doe has plausibly pleaded that defendants participated in a venture.

1

Section 1595(a) states that a victim may bring a civil action against a knowing beneficiary of "participation in a venture," but it does not define this phrase.[5] Defendants rely on the definition used by the Eleventh Circuit: "taking part in a common undertaking or

---

[4]Defendants do not contest that Doe is a "victim" for purposes of §1595(a). And the court concludes that she has plausibly pleaded this element of her claims. Although § 1595 does not define "victim," at the time Congress included the relevant phrase, "victim" was defined as "[a] person harmed by a crime, tort, or other wrong." *See* Victim, Black's Law Dictionary (7th ed. 1999). Here, Doe has plausibly pleaded that she was harmed as a result of her traffickers' violation of § 1591 when they knowingly caused her to engage in commercial sex acts in hotels through force and threats of force. *See* 18 U.S.C. § 1591. Accordingly, for purposes of § 1595(a), Doe has plausibly pleaded that she is a "victim."

[5]Many courts have debated whether § 1591's definition of "participation in a venture" applies to § 1595. *See E.S. v. Best W. Int'l, Inc.*, 510 F.Supp.3d 420, 427 (N.D. Tex. 2021) (Lynn, C.J.). Because neither party contends that it does, the court assumes *arguendo* that it does not.

- 11 -

enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021); *see also Doe 1 v. Apple Inc.*, 96 F.4th 403, 415 (D.C. Cir. 2024) (defining "participation in a venture" as "taking part or sharing in an enterprise or undertaking that involves danger, uncertainty, or risk, and potential gain"). Doe contends that allegations of a "continuous business relationship" between a hotel owner-operator and a trafficker are sufficient to plausibly plead "participation in a venture."

The Seventh Circuit concluded in *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 559-60 (7th Cir. 2023):

> Where the participant provides assistance, support, or facilitation to the trafficker through such a "continuous business relationship," a court or jury may infer that the participant and trafficker have a "tacit agreement" that is sufficient for "participation" under Section 1595. To survive a motion to dismiss, all that is necessary is for a plaintiff to allege such a "continuous business relationship," which gives rise to an inference, drawn in the plaintiff's favor, that the civil defendant facilitated the venture's success.

*Id.* (cleaned up). Defendants respond that the Seventh Circuit's approach is inapposite because it would hold hotels liable for ordinary arms-length transactions with traffickers.

Courts, including this one, have found little substantive difference between these two approaches. *See, e.g.*, *Doe (S.M.A.) v. Salesforce, Inc.*, 2024 WL 1337370, at *13 (N.D. Tex. Mar. 28, 2024) (Boyle, J.) ("Both definitions require that the alleged participant have an ongoing interest in the success of a specific venture and elect to further the ends of the venture beyond what would reasonably be expected in an ordinary commercial transaction."); *J.H. v. Paramount Hosp. LP*, 2025 WL 2201051, at *4 (N.D. Tex. Aug. 1, 2025)

(Kacsmaryk, J.) (same); *A.D. v. Marriott Int'l, Inc.*, 2023 WL 5510268, at \*4 (M.D. Fla. Aug. 25, 2023) (applying the "continuous business relationship" standard despite being bound by the Eleventh Circuit's definition). But to the extent that there is a meaningful difference between these two approaches, the court's conclusion is the same regardless which one applies.[6]

2

In support of her contention that defendants participated in a venture involving her sex trafficking, Doe alleges that "Jane Doe was trafficked at a hotel owned and operated by Defendants while exhibiting signs and behaviors consistent with [sex trafficking] the presence of Defendants' employees and agents." Am. Compl. (ECF No. 23) ¶ 9. "Malik always rented the same room from Studio 6. He was a repeat[] customer and was known at this location. Malik had a continuous business relationship between Defendants as he was a regular." *Id.* ¶ 78. "During her trafficking, Jane Doe's trafficker frequently and regularly used the Studio 6 locations because he knew that members of the staff looked the other way, despite the obvious signs of sex trafficking associated with Jane Doe's trafficking at Studio 6. Despite this, Studio 6 staff continued providing a venue for Jane Doe's sexual exploitation." *Id.* ¶ 88. "Defendants actively contributed to Jane Doe's ongoing trafficking through acts and omissions that facilitated the work of her traffickers, including, but not limited to, adopting policies and procedures that allowed trafficking to flourish in G6

---

[6]The court applies the definitions offered by the parties, without reaching a final conclusion whether either definition is correct.

properties and failing to implement and enforce adequate anti-sex trafficking policies and training despite their actual knowledge they were profiting off sexual exploitation." *Id.* ¶ 89.

Doe also alleges that defendants

> retain[] and exercise[] control over aspects of the operation of the Studio 6 directly relevant to [her] complaint, including but not limited to: a central online reservation system, revenue management tools, loyalty programs, the hotel website, policies and procedures regarding hotel security, policies and procedures regarding identification requirements and payment method requirements, policies and procedures regarding response to signs of human trafficking, training of hotel staff, and requirements for hotel staff to report suspicions of criminal activity, were involved in day-to-day consulting on operational issues at hotel; access to surveillance systems; collected and monitored data that showed patterns consistent with trafficking; participated in internal investigations; and solicited and received customer feedback and complaints.

*Id.* ¶ 58.

3

The court concludes that, under either definition that the parties offer, Doe has plausibly pleaded that defendants participated in a venture, within the meaning of § 1595(a). Doe alleges an undertaking involving risk and potential profit, namely the use of a specific room at Studio 6 to traffick her.  And the court can reasonably infer that, despite knowledge of the trafficking of Doe at the specific Studio 6 location,[7] defendants maintained an ongoing association with Doe's traffickers and exercised their ownership and control of the Studio 6 location, beyond what would reasonably be expected in ordinary commercial transactions,

---

[7]*See infra* § IV(D)(2).

to provide a venue for their trafficking. *See Doe v. Hyatt Corp.*, 2025 WL 1953857, at *4 (N.D. Tex. July 15, 2025) (Godbey, C.J.) (concluding that the plaintiff plausibly pleaded that owner-operators of a hotel had participated in a venture based on allegations that they had an implicit agreement with traffickers and provided them a designated area of the hotel); *J.H.*, 2025 WL 2201051, at *4 (finding similar allegations sufficient under both the Seventh and Eleventh Circuit approaches); *Doe (K.E.C.) v. G6 Hosp., LLC*, 750 F.Supp.3d 719, 731 (E.D. Tex. 2024) (noting that "there is a general consensus that an overt act in furtherance of sex trafficking is not required for a defendant to 'participate[] in a venture'" (alteration in original) (citation omitted)). These allegations are sufficient to plausibly plead a common undertaking involving risk and potential profit, in violation of the TVPRA.[8]

Accordingly, the court concludes that Doe has plausibly pleaded that defendants "participated in a venture" for the purposes of § 1595(a).

### D

The court now decides whether Doe has plausibly pleaded that defendants had actual or constructive knowledge of her trafficking.

### 1

In support of her allegation that defendants knew or should have known of her

---

[8]The court acknowledges that "it is generally more difficult to [plausibly plead] participation on the part of [] franchisors because they are not the entities that own or operate the hotels[.]" *Doe (K.E.C.)*, 750 F.Supp.3d at 734. But because the court must accept as true Doe's allegation that defendants were owner-operators of the Studio 6 location at issue, *see supra* at § I & note 1, it need not now address whether any defendant can be liable as a franchisor.

trafficking, Doe alleges: "Between 2014 and 2015, while Jane Doe was being trafficked, her trafficker, Malik, rented a specific room and paid for it using cash or prepaid cards. . . . During this time, Jane Doe encountered at least eight buyers daily for up to eight months, and was repeatedly sexually assaulted at the Studio 6." Am. Compl. (ECF No. 23) ¶ 77. "When a new client entered the hotel room, Jane Doe's trafficker would leave the hotel room." *Id.* ¶ 49. "Malik would always wait outside." *Id.* "Malik always rented the same room from Studio 6. He was a repeat[] customer and was known at this location." *Id.* ¶ 78. "Her traffickers confiscated the keys to her car, preventing her from leaving and restricting her freedom of movement. During her captivity, they continued to ply her with drugs and alcohol to maintain control over her." *Id.* ¶ 45. "Staff at the Studio 6 had a reasonable opportunity to observe Jane Doe who was being sexually exploited daily." *Id.* ¶ 48. Employees observed "numerous and obvious signs of sex trafficking, including large quantities of condoms in the trash; ongoing stays paid for in cash or a pre-paid card on a day-to-day basis; and numerous men entering and exiting the same room at all hours; arriving with few possessions for extended stays; and the appearance, demeanor, and restricted movements of the Jane Doe and other victims." *Id.* ¶ 46. "Employees at these hotels were aware of her trafficking and, in accordance with corporate wide policies, reported such activity directly to Defendants. These reports included indicators of trafficking . . . ." *Id.* ¶ 81.

Moreover, Doe's amended complaint references a number of news stories about sex trafficking occurring at G6-branded hotels, many of which were published before or during

the time that Doe was allegedly trafficked.

Defendants respond that the indicia of sex trafficking identified in Doe's amended complaint are consistent with voluntary prostitution, and therefore neither defendants nor their employees can be charged with actual or constructive knowledge of Doe's sex trafficking.

2

Doe's allegations, taken as true, are sufficient to enable the court to reasonably infer that defendants knew or should have known that Doe was being trafficked at the specific Studio 6 location at issue. Not only does she plausibly plead that defendants' staff witnessed clear signs that Doe was being trafficked, she also alleges that the staff, in accordance with company policies, reported such signs to defendants.

Defendants point out that some courts have dismissed § 1595(a) claims based on their failure to satisfy this element because the allegedly observed activities were entirely consistent with voluntary prostitution. *See Hyatt Corp.*, 2025 WL 1953857, at *5. But Doe's allegations—that (i) her traffickers regularly maintained control over her by using drugs and alcohol, (ii) Doe's trafficker would wait outside the door while she was being assaulted, (iii) defendants' staff witnessed and reported the appearance, demeanor, and restricted movements of Doe and other victims, and (iv) defendants knew of sex trafficking occurring at G6 branded hotels and had access to the data and surveillance systems of the relevant Studio 6 hotel—make it plausible that defendants had actual or constructive knowledge that Doe was not acting voluntarily, and instead "was trafficked as a result of force, fraud, or

coercion." *Id.*; *see also Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement . . . .'").

Accordingly, the court holds that Doe has plausibly pleaded that defendants had actual or constructive knowledge that she was being sex trafficked.

E

The court considers next whether defendants knowingly benefited from the trafficking of Doe.

1

Doe alleges that defendants knowingly received the following benefits as a result of their participation in a sex trafficking venture:

> a. Profit from renting rooms to those looking to sexually exploit Jane Doe and other human trafficking victims; b. Increased profit margins due to lower operation cost by refusing to implement proper training of the Hotel Defendants' employees and managers regarding the signs of human trafficking and the exploitation of victims; c. Increased profit margins due to lower operation cost by refusing to hire qualified security officers who would actively combat human trafficking and the exploitation of victims; d. Increased profit margins as a result of continued customer loyalty by traffickers and johns who sought to exploit victims, including Jane Doe, due to Hotel Defendants' lack of measures against the exploitation of victims and human trafficking. This customer loyalty led to continued alcohol, food, and room sales; e. Increased profit margins as a result of presenting a more "marketable brand" to traffickers and johns looking to exploit victims–which in turn leads to higher alcohol, food, and room sales when these traffickers and johns visit Hotel Defendants' property; and f. Increased profit margins by knowingly catering to the needs of a criminal subculture that is looking for locations that will not actively enforce laws against human trafficking and the exploitation of victims or take active

- 18 -

security measures to prevent human trafficking and the exploitation of victims on their property. g. Other direct and indirect benefits of both a financial and non-financial nature to be proven at trial.

Am. Compl. (ECF No. 23) ¶ 124.

Defendants acknowledge that "courts generally agree that the 'knowingly benefits' element 'merely requires that [the] [d]efendant knowingly receive a financial benefit'—and 'the rental of a hotel room' or 'royalties from that rental' qualifies as such." D. Br. (ECF No. 46) at 11 (alterations in original) (quoting *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F.Supp.3d 921, 936 (D. Or. 2020)).  But they maintain that such a benefit must come from participation in a venture.

2

The court concludes that Doe has plausibly pleaded that defendants knowingly benefited from her trafficking by, *inter alia*, profiting from renting rooms to Doe's traffickers, and that such benefits were the result of defendants' participation in a venture. *See supra* § IV(C)(3).

Accordingly, the court declines to dismiss Doe's TVPRA claim.[9]

---

[9]Because the court concludes that Doe has plausibly pleaded a claim for direct beneficiary liability under § 1595(a), it need not address her alternative theory of vicarious beneficiary liability.

- 19 -

V

The court now turns to Doe's claim under Tex. Civ. Prac. & Rem. Code Ann. § 98.002.

Doe responds to defendants' motion to dismiss that she "does not oppose the dismissal of claims under Tex. Civ. Prac. & Rem. Code Ann. § 98.002 and confirms that these claims are not being pursued." P. Resp. (ECF No. 51) at 6 n.1.

Accordingly, the court denies without prejudice as moot defendants' motion to dismiss Doe's § 98.002 claim.

\* \* \*

For the reasons explained, the court denies defendants' motion to dismiss, in part on the merits and in part as moot.

**SO ORDERED**.

September 22, 2025.

SIDNEY A. FITZWATER
SENIOR JUDGE